**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**IN AND FOR PINELLAS COUNTY, FLORIDA**
**CIVIL DIVISION**

**ROBERT W. WUNDERLICH,**

**Plaintiff,**

**v.** **Case No.**

**BLACKBIRD TECHNOLOGIES, INC.,**
**a foreign corporation;**
**RAYTHEON COMPANY,**
**a foreign corporation; and**
**RAYTHEON BLACKBIRD TECHNOLOGIES,**
**INC., a foreign corporation,**

**Defendants.**
_______________________________________/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**COMES NOW** Plaintiff, ROBERT W. WUNDERLICH, by and through his undersigned counsel, and sues the Defendants, BLACKBIRD TECHNOLOGIES, INC., a foreign corporation; RAYTHEON COMPANY, a foreign corporation; and RAYTHEON BLACKBIRD TECHNOLOGIES, INC., a foreign corporation, and states as follows:

## <u>JURISDICTION AND VENUE</u>

1. This is an action for damages which exceed Fifteen Thousand ($15,000.00) Dollars, exclusive of costs and interest.

2. Venue lies in Pinellas County because a substantial part of the events giving rise to the subject claim arose therein and/or Defendants have an agent or other representative in Pinellas County, Florida.

## <u>PARTIES</u>

3. At all times material herein, Plaintiff, ROBERT W. WUNDERLICH (hereinafter "Plaintiff" or "Wunderlich") was and is a resident of Hillsborough County, Florida.

4. At all times material herein, Defendants, BLACKBIRD TECHNOLOGIES, INC.; and RAYTHEON COMPANY, were and are foreign corporations, authorized to and doing business in the State of Florida; and were and are a defense contractor headquartered in Waltham, Massachusetts and/or Herndon Virginia, with offices in Pinellas County Florida, and contracts supporting United States Special Operations Command ("USSOCOM") in Hillsborough County, Florida.

5. At all times material herein, Defendant, RAYTHEON BLACKBIRD TECHNOLOGIES, INC., was and is a foreign corporation, doing business in the State of Florida, with headquarters in Waltham, Massachusetts and/or Herndon, Virginia and offices in Pinellas County, Florida, and contracts supporting United States Special Operations Command ("USSOCOM") in Hillsborough County, Florida, and which, personally, or through an agent, is subject to the jurisdiction of this Court, as the subject cause of action arises from one or more of the following acts by said Defendant:

1) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
2) Committing a tortious act within this state.

In addition, at all times material herein, said Defendant was and is engaged in substantial and not isolated activity within the State of Florida, regardless of whether such the subject causes of action arise from said activity. As such, Defendant is subject to jurisdiction and service of process pursuant to Sections 48.193 and 48.194, *Florida Statutes.*

6. Defendants, BLACKBIRD TECHNOLOGIES, INC.; RAYTHEON COMPANY; and RAYTHEON BLACKBIRD TECHNOLOGIES, INC., will hereafter be referred collectively as "Defendants" or "Blackbird-Raytheon."

7. At all times material herein, Defendants were and are an "employer" as defined by the laws under which this action is brought and employ the required number of employees.

8. At all times material herein, Defendants were joint employers and/or a common enterprise with regard to Plaintiff's employment.

**ADMINISTRATIVE PREREQUISITES**

9. All conditions precedent to bringing this action have occurred.

10. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

11. More than 180 days have passed since the filing of the charge.

12. Plaintiff has received a Right to Sue from the EEOC.

**FACTUAL ALLEGATIONS**

13. Plaintiff spent 21 years honorably serving his country as a member of the United States Special Forces (a/k/a the "Green Berets").

14. During his tenure as a Green Beret, Plaintiff served in three (3) different Special Forces Group, ultimately rising to the rank of Chief Warrant Officer Three.

15. Plaintiff served in the first Gulf War as an Advisor and served two (2) tours (as recently as 2003) in support of Operation Enduring Freedom.

16. As a result of his extensive service as a Green Beret, along with numerous long-term physical injuries, Plaintiff has suffered mental health and psychological effects, including, but not limited to, delayed onset suicidal ideations, anger issues, depression, flashbacks, nightmares, social anxiety, and other issues, related to his military service.

17. Upon retiring from the Special Forces in 2004, Plaintiff began his private sector career as a government contractor. He began working as a contractor with Eagan, McAllister, and Associates ("EMA")/Science Applications International Corporation ("SAIC") in 2004 working under a United States Specials Operations Command ("SOCOM") contract.

18. Plaintiff has consistently worked with SOCOM since 2004, and has obtained a Master's Degree in Procurement and Acquisition, a Graduate certificate in Government Contracting, and a Level II COR Certification from the Defense Acquisition University ("DAU").

19. In 2009, Plaintiff accepted employment with Defendant, BLACKBIRD TECHNOLOGIES, INC., as a Field Service Representative ("FSR") working in the SOCOM J3 in support of the Hostile Forces-Tagging, Tracking, and Locating ("HF-TTL") Program Office.

20. In April 2010, Plaintiff was moved to the Field Service Manager position for Defendant, BLACKBIRD TECHNOLOGIES, INC.

21. Plaintiff provided technical support and operational training support to the SOCOM, such as providing specialized tactical surveillance equipment support to the Special Operations Forces ("SOF") military units, SOF Component Headquarters, and Theater Special Operations Commands ("TSOCS").

22. In his position as HQ FSR manager, Plaintiff was responsible for developing and maintaining databases pertaining to Tagging, Tracking, and Locating Concept of Operations ("TTL CONOPS"), which included maintaining the following information: the development, execution, and completion of CONOPs for training scenarios, information regarding planned kinetic operations, various devices employed, locations, unit/ group, and any lessons learned. In his capacity as the HQ FSR manager, Plaintiff was also responsible for reviewing and tracking all Quick Reaction Capability requests submitted by the various TSOCs.

23. Plaintiff performed admirably in his position, receiving commendations from his superiors as well as his subordinates. Indeed, as recently as October 2014, Plaintiff received a positive performance evaluation from Mr. Wiggins, his direct supervisor with Defendant, BLACKBIRD TECHNOLOGIES, INC., and a 2.3% raise.

24. During his tenure with Defendant, BLACKBIRD TECHNOLOGIES, INC., Plaintiff never received any negative reviews or comments about his performance. In fact, on December 12, 2014, Plaintiff was publicly recognized at the office Christmas party for his exemplary performance with Defendant, BLACKBIRD TECHNOLOGIES, INC., for the previous five (5) years of service.

25. In November 2014, Defendant, RAYTHEON COMPANY, a large defense contractor that provides intelligence support to the Department of Defense, acquired Defendant, BLACKBIRD TECHNOLOGIES, INC. On November 5, 2014, Plaintiff received a letter of employment notification from Defendant, RAYTHEON COMPANY, indicating that he would be retained on as a full time employee upon the merger.

26. Over the years, Plaintiff has become extremely involved in veterans' issues and has been a strong advocate for suicide prevention in the veterans community. In the interest of reaching out to other members of this community, on December 18, 2014, Plaintiff posted a message to the Facebook group, SF (i.e., Special Forces) Brothers, in hopes that "what [he had] written will help somebody else and not be viewed as a moment of weakness."

27. Many employees, former employees, and friends of employees from Blackbird Technologies are members of this Facebook group, including Mr. Chris Robinson, Mr. Craig Archer, Mr. Dan Mason, Mr. John Veltri, and countless others.

28. As part of this post, Plaintiff included a Word document entitled "My Struggle with Mortality and Reality." In this letter, Plaintiff admitted to struggling with depression for the previous nine (9) months, including coping with thoughts of suicide. Plaintiff further noted that he had not been "forthright about [his] demons," noting that he "really had nobody to talk to." Plaintiff recounted how he had seen a post on the SF Brothers' Facebook Page from another

veteran and how reaching out and speaking with this person helped Plaintiff cope with his disability.

29. In this same document, Plaintiff noted that he had written this essay "in hopes that other people struggling with this same type of acceptance issues or that voice telling them to quit while they are ahead can benefit from my struggle, and know that reaching out can be a good thing."

30. The very next day, on December 19, 2014, less than 12 hours after the disclosure, Plaintiff was summoned to a meeting with Mr. Steve Schmidt and Mr. Richard "Bart" Wiggins, without notice or any indication as to the purpose or subject of the meeting.

31. During this meeting, Mr. Wiggins informed Plaintiff that he was being replaced, stating Major Patrick Collins, Program Manager, Special Reconnaissance, Surveillance and Exploitation, USSOCOM wanted someone who was "deployable."

32. Prior to this conversation, Plaintiff had never received any communications from Major Collins indicating the above.

33. Furthermore, earlier in the year (i.e., summer of 2014), Plaintiff had been notified that his position was not going to be deployable because of the multiple daily and weekly duties associated with his position that could not go unattended for extended periods of time. These activities included duties such as operational and administrative support of program personnel, administration of the airtime program including requesting and issuing of SIM cards, activation and deactivation of airtime devices, tracking of orders, and general project administrative tasks such as resolving airtime and deployment issues.

34. Despite these prior assertions and actual existing duties, Mr. Schmidt informed Plaintiff that Major Collins wanted someone "deployable" and that Plaintiff's last day would be January 19, 2015 (even though January 19th was a federal holiday).

35. Notably, at no point had Plaintiff ever indicated that he was unwilling or unable to deploy. Indeed, Plaintiff had participated in a one-week deployment in October 2014 to Lexington, Kentucky, and then another deployment to Clarksville, Tennessee in December 2014. Thus, not only was Plaintiff able to deploy, BTI had deployed Plaintiff twice within a two (2) month span.

36. It is the good faith information and belief of Plaintiff that Defendants became aware of the Facebook posting by Plaintiff the previous evening.

37. Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

**COUNT I**
**TITLE VII – AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADAAA"): DISABILITY DISCRIMINATION**

38. Plaintiff realleges and adopts the allegations stated in paragraphs one through 37, as if set out in full hereafter.

39. Plaintiff is an individual entitled to protection under the Americans with Disabilities Act of 1990 and its amendments ("ADAAA").

40. Plaintiff is an employee within the meaning of the ADAAA.

41. Plaintiff is an individual with a disability within the meaning of the ADAAA, i.e., a person who has a physical or mental impairment that substantially limits one or more major life activity, as more specifically described above.

42. Plaintiff is also an individual with a disability within the meaning of the ADAAA because of his record of impairment or because Defendants regarded or perceived him as having an impairment.

43. Plaintiff is a qualified individual with a disability within the meaning of the ADAAA because Plaintiff, with or without accommodation, can perform the essential functions

of his job with Defendants.

44. By the conduct described above, Defendants have engaged in unlawful employment practices and discriminated against Plaintiff on account of his known disability and/or because Defendants regarded or perceived him as having a disability and/or because of Plaintiff's record of having a disability, in violation of the ADAAA.

45. The above-described act of disability discrimination, i.e., Defendants' termination of Plaintiff, constitute a violation of the ADAAA, for which Defendants are liable.

46. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and future benefits;

d. Compensatory damages, including for emotional pain and suffering;

e. Other pecuniary and non-pecuniary losses;

f. Injunctive relief;

g. Attorney's fees and costs;

h. Punitive damages; and

i. For any other relief this Court deems just and equitable.

**WHEREFORE,** Plaintiff, ROBERT W. WUNDERLICH, demands a trial by jury and a judgment against Defendants, BLACKBIRD TECHNOLOGIES, INC.; RAYTHEON COMPANY; and RAYTHEON BLACKBIRD TECHNOLOGIES, INC., in an amount within the jurisdictional limits of this Court, to wit: More than Fifteen Thousand ($15,000.00) Dollars, plus attorney's fees, costs, interest, and for such other relief to which the Plaintiff may be justly entitled.

**COUNT II**
**FLORIDA CIVIL RIGHTS ACT ("FCRA"): DISABILITY DISCRIMINATION**

47. Plaintiff realleges and adopts the allegations stated in paragraphs one through 37, as if set out in full hereafter.

48. As described above, Plaintiff is an employee within the meaning of the Florida Civil Rights Act ("FCRA"), Chapter 760, *Florida Statutes*.

49. Plaintiff is an individual with a disability within the meaning of the FCRA and/or interpretive decisional authority, as more specifically described above.

50. Plaintiff is also an individual with a disability within the meaning of the FCRA because of his record of impairment or because Defendants regarded or perceived him as having an impairment.

51. Plaintiff is a qualified individual with a disability within the meaning of the FCRA because, with or without a reasonable accommodation, can perform the essential functions of his job with Defendants.

52. By the conduct described above, Defendants have engaged in unlawful employment practices and took adverse employment actions and discriminated against Plaintiff on account of his known disability and/or because the Defendants regarded or perceived him as having a disability and/or because of Plaintiff's record of having a disability, in violation of the FCRA.

53. The above-described act of disability discrimination, i.e., Defendants' termination of Plaintiff, constitute a violation of the FCRA, for which Defendants are liable under the FCRA.

54. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and future benefits;

d. Compensatory damages, including for emotional pain and suffering;

e. Other pecuniary and non-pecuniary losses;

f. Injunctive relief;

g. Attorney's fees and costs;

h. Punitive damages; and

i. For any other relief this Court deems just and equitable.

**WHEREFORE,** Plaintiff, ROBERT W. WUNDERLICH, demands a trial by jury and a judgment against Defendants, BLACKBIRD TECHNOLOGIES, INC.; RAYTHEON COMPANY; and RAYTHEON BLACKBIRD TECHNOLOGIES, INC., in an amount within the jurisdictional limits of this Court, to wit: More than Fifteen Thousand ($15,000.00) Dollars, plus attorney's fees, costs, interest, and for such other relief to which the Plaintiff may be justly entitled.

**DEMAND FOR JURY TRIAL**

55. Plaintiff requests a jury trial on all issues so triable.

**DATED:** January 31, 2017.

**FLORIN ROEBIG, P.A.**

**WIL H. FLORIN, ESQUIRE**
Florida Bar No.: 0337234
Primary: whf@florinroebig.com
Secondary: Lisa@florinroebig.com
777 Alderman Road
Palm Harbor, FL 34683
Telephone (727) 786-5000
Facsimile (727) 772-9833
Attorneys for Plaintiff